Filed 7/18/25  P. v. Carter CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DEWAYNE NORMAN CARTER,<br><br>Defendant and Appellant. | C101181<br><br>(Super. Ct. No. CRF090001084)<br><br>OPINION ON TRANSFER |

Defendant Dewayne Norman Carter appeals from the denial of his resentencing petition brought pursuant to Penal Code[1] section 1172.6.  Carter originally argued that: (1) the trial court improperly relied on the preliminary hearing transcript to find him ineligible for relief at the prima facie stage; and (2) his counsel provided ineffective

---

[1] Undesignated statutory references are to the Penal Code.

1

assistance by failing to object to the court's reliance on the preliminary hearing transcript and by conceding that Carter was ineligible for relief. In our prior opinion, we agreed with Carter on his first contention, reversed the order denying his petition, and remanded for the trial court to issue an order to show cause and conduct further proceedings under section 1172.6.

The California Supreme Court granted review and transferred the matter back to us with directions to vacate our opinion and reconsider the cause in light of *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*). By separate order, we vacated our decision.

For the reasons detailed below, we vacate the trial court's order denying Carter's section 1172.6 petition and remand for the court to reconsider its decision in light of *Patton*, *supra*, 17 Cal.5th 549. Following proceedings on remand, the trial court is further directed to correct the abstract of judgment to delete the indication that Carter was sentenced pursuant to section 667, subdivisions (b) through (i), or section 1170.12.

## BACKGROUND

In 2014, Carter pled guilty to a first degree murder (§ 187, subd. (a)) that was committed willfully and with premeditation and deliberation. Carter also admitted that the murder was committed while he was engaged in, or was an accomplice in, the commission of or attempted commission of a burglary. (§ 190.2, subd. (a)(17)(G).) The trial court sentenced him to life without the possibility of parole. The abstract of judgment indicates that Carter was sentenced pursuant to section 667, subdivisions (b) through (i), or section 1170.12.

In 2023, Carter petitioned for resentencing under section 1172.6. On a preprinted form petition, he checked boxes next to statements indicating he met the statutory conditions for relief. The People opposed the petition. They argued that, based on the preliminary hearing transcript, it was evident Carter was the actual killer, and thus was ineligible for relief. Carter did not file a reply brief.

2

*Preliminary Hearing*

At Carter's preliminary hearing, Sergeant Robert Nevins testified that, on April 27, 2009, he came across a car parked off the side of the road. Carter approached Sergeant Nevins and claimed the car was his but later admitted it was the victim's. Carter bolted toward a nearby river and leapt into the water. Police apprehended him. The victim's wallet and checkbook were found in the car, as was a statue with what appeared to be blood and human hair on it. Police went to the victim's home to conduct a welfare check and found the victim dead.

Detective Nicholas Morawcznski testified about his interview with Carter. In that interview, Carter gave various accounts of what happened. In one account, Carter claimed he had been smoking cocaine with the victim and the victim's partner at the victim's home. Carter said when he attempted to leave, he was struck by the victim's partner. Carter claimed the partner had a gun and attempted to have Carter orally copulate him. The partner then said he thought it would be funny to have two people struggle for their lives and forced Carter and the victim to fight. Carter said he eventually blacked out and did not remember anything until the point he went into the river.

Later in the interview, Carter gave a different account. In this version of events, only Carter and the victim were present at the victim's home. A fight ensued but Carter claimed the victim was still moving when he left. Detective Morawcznski asked Carter, "Why did you have to kill him?" Carter responded, "I don't know why."

An investigator testified she listened to recordings of several phone calls Carter made while in jail. In one call, Carter said, "The mother fucker wouldn't kick the bucket for shit."

Officers also testified as to their interviews with other witnesses. One witness told an officer she heard Carter say, "The son of a bitch deserved it. He was a piece of shit, and that's all you need to know." A different witness told Detective Morawcznski he had dropped Carter off at the victim's home on several occasions, and, on one of those

3

occasions, Carter said he "intended to tie this guy up, leave him buck naked, and rob him."

*Section 1172.6 Prima Facie Hearing*

At the prima facie hearing, defense counsel stated that, after having reviewed the record, he did not believe Carter was eligible for relief under section 1172.6. The trial court ultimately denied Carter's petition at the prima facie stage, stating: "Mr. Carter's petition is contradicted by the record of conviction in this case. The factual basis for his plea was the Preliminary Hearing transcript, and the Preliminary Hearing transcript establishes that Mr. Carter was convicted in this case as the actual killer and the only killer; therefore, he is not entitled to relief pursuant to the change in the law, and he is ineligible for relief under that law as a matter of law." Carter filed a timely notice of appeal.

## DISCUSSION

In our prior opinion, we concluded the trial court erred in relying on the preliminary hearing transcript to deny Carter's section 1172.6 petition. The California Supreme Court granted review and transferred the matter back to us with directions to vacate our opinion and reconsider the cause in light of its recent decision in *Patton*, *supra*, 17 Cal.5th 549. We vacated our prior decision and the parties submitted additional briefing addressing "matters arising after the previous Court of Appeal decision in the cause." (Cal. Rules of Court, rule 8.200(b)(2).)

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 achieved this, in part, by amending section 188 to state that "[m]alice shall not be imputed to a person

4

based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Senate Bill No. 1437 also created, in what is now section 1172.6, a mechanism for individuals convicted of qualifying offenses to petition for resentencing.

A section 1172.6 petitioner must make a prima facie showing that he or she is entitled to relief. (§ 1172.6, subd. (c).) The California Supreme Court has explained that "the prima facie inquiry under [section 1172.6,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) At this stage, the trial court should also not engage in factfinding involving the weighing of evidence or the exercise of discretion. (*Id*. at p. 972.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id*. at p. 971.)

In *Patton*, *supra*, 17 Cal.5th 549, our Supreme Court considered whether "a court, in determining at the prima facie stage whether a petitioner was convicted under a now-invalid theory, [may] rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations." (*Id*. at p. 564.) The court held that a trial court could do so, and that this did not constitute improper judicial factfinding. (*Ibid*.)

5

In *Patton*, the petitioner submitted a preprinted, checkbox form petition indicating he was entitled to relief under section 1172.6. (*Patton*, *supra*, 17 Cal.5th at p. 559.) The People opposed the petition. (*Id*. at pp. 559-560.) They argued that the preliminary hearing transcript foreclosed relief because, based on evidence adduced at the hearing, the petitioner had pled guilty under a direct perpetrator theory. (*Id*. at p. 560.) At the preliminary hearing, a police officer—who was familiar with the petitioner from previous encounters—identified him as the shooter in a surveillance video. (*Id*. at p. 557.) The petitioner did not file a reply brief. (*Id*. at p. 560.) The trial court denied the section 1172.6 petition at the prima facie stage, explaining that, based on the unrebutted preliminary hearing transcript, it viewed the petitioner as the sole shooter who acted alone. (*Ibid*.)

Our Supreme Court concluded that the trial court properly denied the petitioner's section 1172.6 petition. It explained: "[A] petitioner who offers only conclusory allegations of entitlement to relief under section 1172.6, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Patton*, *supra*, 17 Cal.5th at p. 557.) The court further observed that "resolution of the prima facie inquiry in Patton's case did not call for resolution of a factual dispute . . . . Rather than resolving a contested factual dispute, statements within Patton's preliminary hearing transcript contributed specific factual assertions about his conviction—namely, that it was premised on him being the sole shooter." (*Id*. at pp. 568-569.)

"[P]etitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail. It follows . . . that should a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage and should instead grant petitioner an evidentiary hearing, assuming relief is not otherwise foreclosed. [¶] A dispute regarding

6

the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify someone else as the direct perpetrator. . . .  But absent specific facts, no such dispute arises . . . from mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion." (*Patton*, *supra*, 17 Cal.5th at p. 567.)  As part of their briefing in *Patton*, the People agreed that " ' "if the record contains any indication [the petitioner] had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition." ' " (*Id*. at p. 560, fn. 4.)

Ultimately, the Supreme Court affirmed the judgment but remanded the matter to afford the petitioner an opportunity to plead additional facts demonstrating entitlement to relief.  (*Patton*, *supra*, 17 Cal.5th at pp. 569-570.)

As was the case in *Patton*, Carter submitted a preprinted, checkbox form petition with conclusory allegations indicating he satisfied the statutory conditions for resentencing.  The People, citing evidence from the preliminary hearing, argued Carter was not entitled to relief because he was the actual killer.  And, like the petitioner in *Patton*, Carter did not file a reply brief.

But Carter contends the present case is distinguishable from *Patton* because here the preliminary hearing transcript does not contain "unchallenged, *relief-foreclosing facts*" (*Patton*, *supra*, 17 Cal.5th at p. 564, italics added) establishing his ineligibility.  In his view, since one of the accounts implicated the victim's partner in the murder, the trial court could not conclude Carter was the actual and sole killer without engaging in impermissible factfinding.  The People insist in response that "[t]he record definitively shows that [Carter] alone was the actual killer."

The parties also discuss whether hearsay evidence offered at the preliminary hearing can be considered at the prima facie stage.  Under section 872, subdivision (b), "qualified peace officers at preliminary hearings may ordinarily testify as to statements made to them by others."  (*People v. Ramos* (2025) 112 Cal.App.5th 174, 184, fn. 4.)

7

But a trial court conducting an evidentiary hearing following the issuance of an order to show cause may not consider law enforcement officer hearsay evidence admitted at a preliminary hearing "unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).)

Carter contends that, because such hearsay testimony cannot be considered at an evidentiary hearing, it cannot be the basis for denying relief prior to the evidentiary hearing. Some case law supports this argument. (See *People v. Williams* (2024) 103 Cal.App.5th 375, 397 & fn. 11, review granted Sept. 11, 2024, S286314, disapproved on another ground by *Patton*, *supra*, 17 Cal.5th at p. 565, fn. 8; cf. *People v. Flores* (2022) 76 Cal.App.5th 974, 988 [holding that if the factual summary in an appellate opinion "may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage"], disapproved on another ground by *Patton*, *supra*, 17 Cal.5th at p. 569, fn. 12.) Our Supreme Court noted this issue in *Patton* but determined it was unnecessary to address it. (See *Patton*, at p. 557, fn. 2.) The People here do not take a position on whether hearsay evidence from the preliminary hearing can be considered at the prima facie stage, but instead argue the trial court's denial is adequately supported by non-hearsay evidence.

In this case, the trial court denied Carter's petition because "the Preliminary Hearing transcript establishes that Mr. Carter was convicted in this case as the actual killer and the only killer." The more precise framing would be that facts from the preliminary hearing refuted the conclusory allegations in Carter's petition. (See *Patton*, *supra*, 17 Cal.5th at p. 567, fn. 10 ["[W]hile it may be that a record can ' " 'refut[e] the allegations made in the petition' " ' [citation], it would be somewhat imprecise to say that evidence in a preliminary hearing transcript, offered at the prima facie stage, ' "irrefutably *establishes*" ' any particular fact to any particular standard of proof"].) That aside, the record is unclear as to which facts from the preliminary hearing the court

8

relied on in making its determination. The People's opposition brief detailed hearsay evidence offered at the preliminary hearing, and it is possible the court based its conclusion, at least in part, on that hearsay—evidence Carter now asserts could not be considered. Further, because Carter's counsel believed Carter was ineligible for relief, no attempt was made to respond to the People's opposition with specific, nonconclusory allegations. As noted, Carter now contends that admissible evidence in the preliminary hearing transcript could have supported such a response.

On this record, we cannot determine whether the trial court properly denied Carter's petition. Under these circumstances, we conclude the appropriate course is to vacate the court's order denying the petition and remand the matter for the trial court and the parties to reconsider the petition in light of the guidance set forth in *Patton*, *supra*, 17 Cal.5th 549. As our Supreme Court permitted in *Patton*, Carter may plead additional facts on remand to establish his prima facie case for relief. We express no opinion on the ultimate outcome of those proceedings.

The parties raised an additional issue regarding the abstract of judgment in their initial briefing. They agree, as do we, that the abstract of judgment erroneously states that Carter was sentenced pursuant to section 667, subdivisions (b) through (i), or section 1170.12. These provisions pertain to the "Three Strikes" law, under which Carter was not sentenced. Upon remand, the trial court shall correct the abstract of judgment to remove any indication that Carter was sentenced under these provisions.

### DISPOSITION

The order denying Carter's petition for resentencing is vacated, and the matter is remanded for the trial court and the parties to reconsider Carter's petition in light of *Patton*, *supra*, 17 Cal.5th 549. Following proceedings on remand, the trial court shall prepare a corrected abstract of judgment that removes the notation indicating Carter was sentenced under section 667, subdivisions (b) through (i), or section 1170.12. The trial

9

court shall then forward the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

/s/<br>
BOULWARE EURIE, J.

We concur:

/s/
MAURO, Acting P. J.

/s/
RENNER, J.